UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MARCELLUS M. MASON, JR.

        Plaintiff,                       Case No. 09-14370-CIV-Moore/Simonton

v.

CHASE HOME FINANCE, LLC,
successor by merger to Chase Manhattan Mortgage Corporation

        Defendant

_____/



FILED by _____ D.C.

JAN 19 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## AMENDED COMPLAINT

### Nature Of the Action

1. This is an action against CHASE Home Finance, LLC, hereafter, "Chase", for wrongfully disregarding and breaching a Mortgage Loan Repayment agreement and then subsequently reporting this foreclosure to the credit reporting agencies.

### JURISDICTION AND VENUE

2. This complaint alleges violations of the federal Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 et.seq .

3. This court also has jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship, as the Plaintiff and Defendant reside in two different states and the amount in controversy exceeds $75,000.

4. This case arises under the laws of the United States, and presents a federal question within this Court's jurisdiction under Article III of the federal Constitution, 28 U.S.C. §§1331, 1343, and 1361.

5. Plaintiff also asserts state law claims of Breach Of Implied Covenant Of Good Faith And Fair Dealing, Breach Of Contract, Unjust Enrichment, Promissory Estoppel, Conversion, Civil Theft, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), F.S. Ch. 501, Part II.

6. This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 42 U.S.C. § 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391(c).

## THE PARTIES

8.  Chase Home Finance, LLC, successor by merger to Chase Manhattan Mortgage Corporation, hereafter "Chase", is headquartered in Edison, New Jersey, 343 Thornall Street, Suite 7, Edison, NJ 08837.

9.  Plaintiff, Marcellus M. Mason, Jr., hereafter, "Mason", resides at 214 Atterberry Drive in Sebring, Florida.

## MATERIAL FACTS

10. On July 11, 1997, Plaintiff took out a mortgage with Treasure Coast Mortgage Corporation. This mortgage was guaranteed by the Veterans Administration of the United States.

11. Chase has alleged that it was assigned the mortgage sometime on or about July 11, 1997. This loan was assigned Chase Loan No. 1511160565 and VA Loan No. 1761094032.

12. On or about April 2004, Chase returned a mortgage payment from the Plaintiff of approximately $470.00. Chase returned this check stating that the Plaintiff was now in default.

13. Upon notice of default, Plaintiff immediately began seeking a repayment plan or a loan modification.

14. During the period between April 2004, when the Plaintiff was first notified by Chase that he was in default, and December 2004, Chase tendered some four different agreements to the Plaintiff. On each occasion CHASE assigned a new clerk to the case.

15. On **July 8, 2004,** Chase filed a two count Complaint against the Plaintiff In The Circuit Court Of The Tenth Judicial Circuit, In And For Highlands County, Florida, Case No. GC04-418, seeking a final judgment of foreclosure. At that time, Chase claimed that the Plaintiff had a principal balance of $47,471.84. Chase alleged that Plaintiff was in default as of **March 1, 2004**. Chase's second count sought to reestablish the promissory note pursuant to Fla.Stat. §673.3091. Chase never filed or otherwise sought to amend its complaint to assert any other claim.

16. Ultimately in this lawsuit, Case No. GC04-418, Chase ultimately asserted two different and successive mortgage payment default dates, March 2004, and an unpled claim, January 1, 2005. Chase never admitted that either of these purported defaults was ever cured. **CHASE** never accelerated the loan on the unpled purported **JANUARY 1, 2005** default claim as required under the promissory note.

17. Plaintiff relied to his detriment on Chase's purported "good faith" efforts at a loan workout and never filed an

2

answer or asserted affirmative defenses to Chase's foreclosure action on the alleged March 2004 default.

18. In approximately September 2004, Mason signed a repayment agreement and returned it to Chase. Plaintiff asked that the agreement be modified to reflect a request to reduce the amount of the down payment from $2000 to $1000. Nicole Farley, Chase Repayment, said that this change would be fine if the VA agreed. The VA did agree to the change. Chase failed to send a new repayment plan based upon the change requested by the Plaintiff.

19. Mason sent Chase a letter in December 2004 questioning why it was taking so long to resolve this matter.

20. In December 2004, Chase, having already failed to produce the agreed upon repayment agreement of September 2004 and having waited three months, again decided that the Plaintiff was in Default.

21. Subsequently, in December 2004, a new Chase Repayment clerk was assigned to this matter, and new agreement was made.

22. CHASE tendered the Plaintiff a Repayment Agreement which temporarily modified the terms of the original mortgage. Plaintiff assented to the Agreement. CHASE agreed to forego foreclosure and to dismiss its pending foreclosure action in consideration of payments of approximately $865.00 a month for twelve months and a lump sum payment of $5261.73.

23. In December 2004, Mason sent Chase a check for $5261.73. This check was a part of the new Repayment agreement and was to be applied to the loan. Apparently, Chase applied a portion of the $5261.73 to principal reduction, reducing the principal from the $47,471.84 alleged in the complaint to the $46,834.78 it claimed in the "final judgment" of November 30, 2005. CHASE made this principal reduction in December 2004 notwithstanding its pending accelerated demand for entire amount due; however, CHASE did not admit the mortgage default was cured.

24. On or about January 15, 2005, Plaintiff signed the new Repayment Agreement and returned it along with a cashier's check of approximately $865.00 via a postage paid FEDEX envelope that was sent to the Plaintiff by Chase. The check was drawn on the Mid Florida Credit Union.

25. In February 2005, Chase returned the check for $865.00 and declared the Plaintiff in default.

26. In a letter dated February 16, 2005, Chase wrote the Plaintiff a letter and stated: *"This letter is to advise you*

3

*that your request for a repayment plan with the Homeowner Assistance Department has been denied for the following reasons: Documents Not Returned.*" There was no allegation that the January 2005 payment was untimely.

27. Chase offered no other explanation for this alleged default of the repayment agreement.

28. On February 22, 2005, Plaintiff sent Chase's attorney, Joe Hoffman, Spear and Hoffman, P.A., an email which in pertinent part stated: "*Today, I received a letter from Chase stating that I did not return the repayment agreement. This letter is supposed to be from Martha Miles, however, there is no signature. The Repayment Agreement was returned via FEDEX the very next day after I received it. Additionally, I have already sent the first payment. Moreover, Chase collected some $5200.00 from me. The bureaucracy at Chase is killing me. Mr. Hoffman please get this matter resolved.*" On February 24, 2005, Mr. Hoffman replied and stated: "*Good Morning. This file is currently on hold.*"

29. On June 1, 2005, Chase's attorney, Joe Hoffman, Spear and Hoffman, P.A., was sent an email in which the Plaintiff which demanded: "*Please have Chase return my check for approximately $5200 forthwith. Chase had no problem returning a check for a mere $868.00. You simply can not have it both ways.*" Neither Chase nor its attorney responded to the email stating why they would not return the check for $5200.

30. On October 25, 2005, CHASE filed a motion for summary judgment. In Chase's AFFIDAVIT IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT, it states: "*Defendant(s) MARCELLUS M. MASON, JR. has/have defaulted under the mortgage and note by failing to make payment due on JANUARY 1, 2005 and all subsequent payments.*" CHASE raised the **JANUARY 1, 2005** default for the first time in its summary judgment motion. **CHASE** never pled this claim or nor sought leave to amend its only Complaint of July 8, 2004.

31. CHASE constructed an unobstructed highway to a virtual default judgment by not pleading its purported **JANUARY 1, 2005** default thereby as a matter of logic and necessity making it impossible for the Plaintiff to raise the counterclaim that CHASE had violated the repayment agreement of December 2004.

32. On October 25, 2005, CHASE abandoned its pleaded claim in the state court Complaint that the Plaintiff was in default as of March 2004.

4

33. In November 30, 2005, Chase was awarded Final Judgment of Foreclosure based upon the unplead claim of the purported January 1, 2005 default. The Court did not adjudicate CHASE's only two pleaded claims, the March 2004 default and reestablishment of the promissory note.

34. The property, house, was sold on February 7, 2006. On February 23, 2006, Plaintiff received an Eviction Notice from the court which was served by the deputy sheriff. The new owner put all of the Plaintiff's possessions on the street.

35. On March 14, 2006, the Clerk of Court for the Tenth Judicial Circuit, In and For Highlands County, Florida swore that it issued a check for $55,967.18 to Chase Home Finance, LLC, successor by merger to Chase Manhattan Mortgage Corporation, for the sale of the house.

36. In toto, CHASE concocted the perfect legal scam by placing the Plaintiff in a quandary and a "legal box" that the Plaintiff could not escape by: inducing Plaintiff to forego a defense to its foreclosure action and by obtaining a Clerk's Default in December 21, 2004 and holding this sword of Damocles over the Plaintiff's head during the pendency of the litigation; then subsequently accepting payment of $5261.73 in December 2004 on a repayment agreement and keeping this money until 2007; returning the first payment of January 2005 on the agreement in February 2005 and telling the Plaintiff he was in default; and then telling Plaintiff he was on hold; and lastly by winning final summary judgment on November 30, 2005 based upon a January 2005 purported default that was raised for the first time in the summary judgment motion thereby precluding the Plaintiff from defending against this unpled January 2005 purported default and claim.

37. Plaintiff received his first credit report from annualcreditreport.com between July 2009 and October 2009.

## ALLEGATIONS OF INCORRECT CREDIT REPORTING

### Disputes Filed With TransUnion

38. According to TransUnion, in October 2009 and November 2009, CHASE reported, updated, and verified the accuracy of the Plaintiff's credit report by asserting that CHASE won a foreclosure judgment against the Plaintiff on or about February 2006. On October 06, 2009 in reply to a dispute by Mason, TransUnion sent CHASE an Automated Credit Dispute Verification (ACDV) and CHASE verified and updated the foreclosure. Chase did not report, and in fact refused to report that the Plaintiff disputed this debt, nor did Chase report that

5

it had disregarded a signed Repayment Agreement.

39. TransUnion disseminated inquires to the following named companies on the dates listed:

HARTFORDINSURANCEPI ,08/2009; ALLSTATE FLORIDA GLF RGN ,08/2009; GEICO INSURANCE,

08/2009; M M via KARMA/TRANSUNION INTERAC , 07/2009; DEBT RECOVERY SOLUTIONS,

06/2009; GEICO INSURANCE, 06/2009; BANK OF AMERICA, 06/2009; MORTGAGE INVESTORS

CORPO, 03/2009; CINGULAR WIRELESS, 02/2009; THE HARTFORD, 01/2009; THE HARTFORD,

10/2008;

### Disputes Filed With Equifax

40. According to Equifax, in October 2009 and November 2009, CHASE reported, updated, and verified the accuracy of the Plaintiff's credit report by asserting that CHASE won a foreclosure judgment against the Plaintiff on or about May 2006.  Chase did not report, and in fact refused to report that the Plaintiff disputed this debt, nor did Chase report that it had disregarded a signed Repayment Agreement.

41. On October 14, 2009, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

42. On October 17, 2009, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

43. On October 23, 2009, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

44. On November 6, 2009, Confirmation # 9308062648, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

45. November 13, 2009, Confirmation # 9314010506, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and

CHASE verified the accuracy of the information.

46. November 19, 2009, Confirmation # 9319017599, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

47. November 20, 2009, Confirmation # 9321017687, in answering a dispute from the Plaintiff, Equifax claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

48. Equifax disseminated "hard" inquires to the following named companies on the dates listed: CIT BANK/BILL ME LATER, 11/16/09; CITI CARDS CBSDNA, 11/27/09; DISCOVER FINANCIAL SERVICES, 11/12/09; HSBC BANK NEVADA,12/04/09, 11/28/09, 11/22/09, 10/02/09. Equifax disseminated "soft" inquires to the following on the dates listed: PRM-AMERICAN INTERNATIONAL ADVERT.,03/31/09; ND-CHOICEPOINT::9332009661,10/15/09, 08/11/09, 08/07/09, 04/14/09, 11/16/08; AR-CITI SD- THE HOME DEPOT, 02/27/09;PRM-FINGERHUT/CIT, 10/02/09, 09/09/09; PRM-GEMB JC PENNEY, 05/28/09; ND-HSBC BANK, 11/09/09.

49. Plaintiff was denied credit by Citi Cards on or about November 3, 2009 due to the foreclosure reported to Equifax by Chase.

50. Plaintiff was denied credit by HSBC on or about November 22, 2009 due to the foreclosure reported to Equifax by Chase.

51. Plaintiff was denied credit by Citi on November 28, 2009 due to the foreclosure reported to Equifax by Chase.

### Disputes Filed With Experian

52. According to Experian, in October 2009, November 2009, and December 2009, CHASE reported, updated, and verified the accuracy of the Plaintiff's credit report by asserting that CHASE won a foreclosure judgment against the Plaintiff on or about May 2006. Chase did not report, and in fact refused to report that the Plaintiff disputed this debt, nor did Chase report that it had disregarded a signed Repayment Agreement.

53. On October 06, 2009 in reply to a dispute by Mason, Experian claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the

information.

54. On November 5, 2009, Plaintiff mailed Experian a dispute. This dispute stated: "*Chase caused the foreclosure it reported by disregarding a signed and legally binding Repayment Agreement. This information should have been shown as being disputed as of October 6, 2009 when Chase received the dispute*." The dispute details the facts surrounding CHASE's breach of the Repayment Agreement. Additionally, this dispute questioned the accuracy of other reported items; i,e,, 180 days past due and Recent Payment. This dispute also informed Experian that a lawsuit against CHASE for reporting this information.

55. November 9, 2009, Report # 2250887047, in answering a dispute from the Plaintiff, Experian claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

56. On November 10, 2009, Plaintiff mailed Experian a dispute. This dispute informs Experian that a lawsuit against CHASE bearing Case No. 09-14370-CIV-Graham/Lynch in the United States District Court for the Southern District of Florida for among things, falsely or inaccurately reporting a mortgage foreclosure. Experian failed to report this item as being in dispute.

57. On November 13, 2009, Report # 0917702270, in answering a dispute from the Plaintiff, Experian exclaimed: "*We have already investigated this information and the credit grantor has verified its accuracy. Please refer to the personal credit report you received for the name, phone number, and address of the credit grantor who verified this information. Pursuant to Section 611(a)(3)(A) of the Fair Credrt Reporting Act, we will not be investigating your dispute again at this time*."

58. On November 17, 2009 Experian sent the Plaintiff a report in which updated the Chase tradeline and refused to report the disputed nature of the mortgage foreclosure. Experian claimed that they researched the Chase credit account (mortgage foreclosure) by sending CHASE an ACDV and CHASE verified the accuracy of the information.

59. On November 23, 2009, Plaintiff sent Experian a dispute contesting the accuracy of the Chase tradeline and the reported foreclosure. This is a four page dispute that cites legal authority for the proposition that an investigation by a CRA must be reasonable. Attached to the dispute was a letter dated October 9, 2009 from a

8

Chase Executive, Sarah L. Spradling, that acknowledged receiving a direct FCRA dispute from the Plaintiff. At the end of its so-called "reinvestigation", Experian concluded that it could report the foreclosure using the Automated Consumer Dispute Verification process, "ACDV", because Chase verified the accuracy of the tradeline even though the Chase Executive, Sarah L. Spradling, declined to verify the accuracy of the information to the Plaintiff or Experian.

60. On November 27, 2009, Plaintiff sent an email to an Experian representative known to the Plaintiff as "Mr. Tom", Consumer Affairs Special Services, which noted that Experian reported the pending dispute as being investigated on November 25, 2009, but by November 27, 2009 the matter was not being reported as under investigation.

61. On December 1, 2009, Plaintiff made a phone call to Experian representative "Mr. Tom" at 1-972-390-4056. Plaintiff asked "Mr. Tom" to delete the tradeline with respect to Chase or report the disputed nature of the debt. Mr. Tom stated that he would do neither. Plaintiff expressly asked Mr. Tom was Experian casting its lot with Chase and Mr. Tom replied yes.

62. On December 10, 2009, Plaintiff mailed Experian a dispute of the reported mortgage foreclosure. This dispute contained two letters from a Chase Executive, Sarah L. Spradling, dated October 9, 2009 and November 27, 2009. The November 27, 2009 letter from Ms. Spaulding stated that Chase was unable to further assist the Plaintiff with respect to the circumstances surrounding the foreclosure proceeding and subsequent credit bureau reporting. On December 21, 2009, Experian sent the Plaintiff a letter claiming that it could not use the information or letters from the Chase Executive, and further that it would conduct a 'verification process'. On December 23, Experian completed its "investigation" and simply updated the information and refused to delete or report the disputed nature of the reference to the Chase mortgage foreclosure. Experian claims that CHASE verified the accuracy of the information. During the entire interval that Experian was allegedly conducting its investigation it did not report the Chase tradeline as being under investigation by Experian.

63. Experian disseminated the following "soft" inquiries to the listed companies on the following dates: QUIZZLE CONSUMER COPY, Date: December 3, 2009; CONSUMERINFO.COM INC, Date: October 1, 2009; CONSUMERINFO.COM INC, Date: October 1, 2009; PROGRESS ENERGY, Date: September 2,

9

2009 , September 2, 2009; PROGRESS ENERGY,  Date:  September 2, 2009; CHOICEPOINT/INS P&C,

Date:  August 11, 2009; PROGRESSIVE INSURANCE,  Date:  August 7, 2009 , June 3, 2009;

CHOICEPOINT/INS P&C,  Date:  June 3, 2009; CHOICEPOINT/INS P&C,  Date:  June 3, 2009;

PROGRESSIVE INSURANCE,  Date:  June 3, 2009; PREMIER BANKCARD INC,  Date:  March 31, 2009;

ENHANCED RECOVERY,  Date:  March 5, 2009; CREDIT ONE BANK,  Date:  March 18, 2008 , January

24, 2008, CREDIT ONE BANK,  Date:  January 24, 2008.

### Disputes Filed With Furnisher Chase

64. On October 6, 2009, Plaintiff sent CHASE a dispute via email which disputed the accuracy of the mortgage

    foreclosure that Chase reported to Equifax, Experian, and TransUnion.  Plaintiff demanded that CHASE delete

    the foreclosure because CHASE itself concocted a foreclosure and disregarded the Repayment Agreement of

    2004.

65. On October 6, 2009, Plaintiff sent CHASE a dispute via USPS and certified mail which disputed the accuracy

    of the mortgage foreclosure that Chase reported to Equifax, Experian, and TransUnion.  Plaintiff demanded

    that CHASE delete the foreclosure because CHASE itself concocted a foreclosure and disregarded the

    Repayment Agreement of 2004.

66. Plaintiff's letter of dispute to Chase specifically cited and quoted Wilson v. Rental Research Services, Inc., 191

    F.3d 911 (8th Cir. 1999) for the proposition that CHASE has a legal obligation to make sure that the

    information it reports is maximally accurate, complete, and not misleading.

67. CHASE and specifically, Sarah L. Spradling, Executive Resolution Group, acknowledged receiving this

    dispute on October 8, 2009.

68. Upon receipt of this dispute on October 8, 2009, CHASE did not report to any of the credit reporting agencies

    that the matter was in dispute.  To date, CHASE has not reported that this matter in dispute.

69. To date, CHASE has not reported the results of its investigation to Plaintiff or to any of the national credit

    reporting agencies.

### Disputes Filed With Innovis

70. On or about December 5, 2009, Plaintiff received his first ever credit report from Innovis Data Solutions, Inc.,

"Innovis" and this report states: "Information last received from source 11/09".

71. On December 7, 2009, Plaintiff filed a dispute over the Internet with Innovis about Chase's inaccurate reporting of a mortgage foreclosure.

72. Plaintiff stated: "Chase breached a repayment agreement. This matter is under dispute with Chase. Litigation is pending in Fed.Ct. SD. Fla. Case#14370 and State Of Fla., 10 Jud.Cir., Case No. GC04-418. Contact Sarah Spradling, Exec Res Grp, 888-310-7995 ext 1883".

73. On December 9, 2009, Innovis completed its "investigation" and stated: "The source [Chase] that furnished this data to us verified the information in our files is correct."

## CAUSES OF ACTION

### First Cause of Action
### Breach Of Implied Covenant Of Good Faith And Fair Dealing

74. PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

75. CHASE and Plaintiff consented to a Repayment Agreement in December 2004.

76. In December 2004, CHASE agreed to forego foreclosure and to dismiss its pending foreclosure action in consideration of payments of approximately $865.00 a month for twelve months and a lump sum payment of $5261.73.

77. Plaintiff has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the contract. Having accepted the check for $5261.73 in December 2004, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73.

78. CHASE, through a conscious and deliberate act, failed or refused to discharge its contractual responsibilities not to seek foreclosure unfairly frustrated the contract's purpose and disappointed the Plaintiff's expectation that CHASE would not foreclose so long as Plaintiff made timely payments under the Repayment Agreement.

79. Defendant's breach was the proximate cause of injury or damage to plaintiff.

80. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

81. Plaintiff seeks actual damages in this matter of $60,221which is current fair market value of the property that was eventually sold.

82. Plaintiff seeks consequential damages as a direct result of Defendant's unlawful behavior because Plaintiff's credit rating was damaged due to the reporting of a foreclosure to the major credit reporting agencies.

83. WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

## Second Cause of Action
## Breach Of Contract

84. PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

85. In December 2004, CHASE agreed to forego foreclosure and to dismiss its pending foreclosure action in consideration of payments of approximately $865.00 a month for twelve months and a lump sum payment of $5261.73.

86. Plaintiff has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the contract. Having accepted the check for $5261.73 in December 2004 , CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73.

87. CHASE disregarded the December 2004 Repayment Agreement by continuing to prosecute its foreclosure action against the Plaintiff.  Chase sold the Plaintiff's home.

88.  Plaintiff seeks consequential damages as a direct result of Defendant's unlawful behavior because Plaintiff's credit rating was damaged due to the reporting of a foreclosure to the major credit reporting agencies.

89. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

90. WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages of $60,221, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and

any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Third Cause of Action
### Unjust Enrichment

91. PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

92. CHASE caused the default and subsequent foreclosure by disregarding the agreement of Dec. 2004.

93. Plaintiff gave CHASE a check for $5261.73 as a part of the Repayment Agreement signed in December 2004.

94. Plaintiff timely made his first payment of approximately $865.00 pursuant to the Repayment Agreement in January 2005.  Having accepted the check for $5261.73, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73.

95. CHASE kept the $5261.73 for almost three years and only returned it after a demand from the Plaintiff. CHASE declined to pay any interest on the money.

96. Plaintiff lost the use of  $5261.73 for almost three years.

97. It would be inequitable for the Defendant to retain the benefit without paying for it.  CHASE made money off of the $5261.73 which it by its own admission it was not entitled to.   Plaintiff lost the use of $5261.73 for almost three years.

98. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

99. WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages,  plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Fourth Cause of Action
### Unjust Enrichment

100.      PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

101.     CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004.

102.     Plaintiff timely made his first payment of approximately $865.00 pursuant to the Repayment Agreement in January 2005.

103.     Having accepted the check for $5261.73, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the January 2005 payment of $865.00 while declining to return the $5261.73.

104.     CHASE kept the $5261.73 for almost three years and only returned it after a demand from the Plaintiff. CHASE declined to pay any interest on the money.

105.     On the day that CHASE filed its foreclosure action, Plaintiff had a principal balance of $47,471.84.

106.     CHASE received a check for 55,967.18 from the sale of property for a gain of $8495.34. CHASE has collected interest off of this gain

107.     CHASE should not be allowed to profit from a foreclosure that it caused. Additionally, it would be inequitable for the Defendant to retain the benefit of the gain of $8495.34 without paying interest for it.

108.      Plaintiff seeks actual damages $8495.34 plus interest.

109.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

110.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys` fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Fifth Cause of Action
### Unjust Enrichment

111.     PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

112.     CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004.

113.     Plaintiff gave CHASE a check for $5261.73 as a part of the Repayment Agreement signed in December 2004.

114.     Plaintiff timely made his first payment of approximately $865.00 pursuant to the Repayment Agreement in January 2005.

115.     Having accepted the check for $5261.73, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73.

116.     CHASE kept the $5261.73 for almost three years and only returned it after a demand from the Plaintiff. CHASE declined to pay any interest on the money.

117.     On **July 8, 2004** CHASE claimed that the Plaintiff had a principal balance of $47,471.84. However, CHASE did not reduce the prinicipal balance when it received and kept the $5261.73 check. As a result, CHASE collected interest on the $47,471.84 from December 2004 until February 2005, notwithstanding the $5261.73 payment, until the house was sold. Stated alternatively, CHASE calculated interest on an inflated $47,471.84 principal balance.

118.     It would be inequitable for the Defendant to retain the interest earned on an inflated principal balance.

119.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

120.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

**Sixth Cause of Action**
**Promissory Estoppel**

121.     PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

122.     In December 2004, CHASE agreed to forego foreclosure and to dismiss its pending foreclosure action in consideration of payments of approximately $865.00 a month for twelve months and a lump sum payment of $5261.73.

123.     Having accepted the check for $5261.73 in December 2004 , CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73.

124.     CHASE kept the $5261.73 for almost three years until sometime in 2007.

125.     Plaintiff relied upon CHASE'S promise not to foreclose.

126.     CHASE later changed its position and foreclosed under the guise of Plaintiff's alleged failure to return documents notwithstanding the fact that the documents in question were returned via FEDEX.

127.     CHASE did not allege that the Plaintiff failed to comply with the terms of the December 2004 agreement.

128.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Seventh Cause of Action
### Conversion

129.     PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, above.

130.     CHASE represented to the Plaintiff that it would not foreclose if Plaintiff agreed to pay $865.00 a month for twelve months and allowed CHASE to keep a check for $5261.73.

131.     CHASE created the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004.   Ultimately, CHASE profited by its own illegal conduct and permanently took the Plaintiff's home.

132.     Having accepted the check for $5261.73, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the January 2005 payment of $865.00 while declining to return the $5261.73.

133.     Plaintiff expressly demanded that CHASE returned the$5261.73 on June 1, 2005 and CHASE refused to return the money.

134.     CHASE kept the $5261.73 for almost three years and only returned it only after a second demand from the Plaintiff.  CHASE declined to pay any interest on the money.

135.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

136.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

**Eighth Cause of Action**
**Conversion**

137.     PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, above.

138.     CHASE represented to the Plaintiff that it would not foreclose if Plaintiff agreed to pay $865.00 a month for twelve months and allowed CHASE to keep a check for $5261.73.

139.     CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004.

140.     Plaintiff timely made his first payment of approximately $865.00 pursuant to the Repayment Agreement in January 2005.

141.     Having accepted the check for $5261.73, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the January 2005 payment of $865.00 while declining to return the $5261.73.

142.     CHASE kept the $5261.73 for almost three years and only returned it only after a demand from the Plaintiff.  CHASE declined to pay any interest on the money.

143.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

144.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

**Ninth Cause of Action**
**Defamation**

17

145.     PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, and section entitled **Disputes Filed With Experian,** above.

146.     CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

147.     CHASE falsely reported to Experian that the Plaintiff caused a foreclosure.

148.     CHASE's actions in falsely and incompletely reporting this matter constituted a multiple publication in that CHASE updated and verified this inaccurate and incomplete information on multiple occasions and third parties have read Plaintiff's credit file since October 2009.

149.     CHASE could have avoided all liability by simply deleting the false, incomplete, and inaccurate foreclosure, but it made a conscious and informed choice to continue reporting the matter.

150.     CHASE intentionally and with malice falsely reported the foreclosure that it caused.

151.     CHASE has refused to correct this matter even though two disputes have been filed with Experian this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to report Plaintiff's mortgage as being in default. A host of other creditors and third parties have read the Plaintiff's credit file in 2009.

152.     Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

153.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

154.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

**Tenth Cause of Action**
**Defamation**

155.    PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, and section entitled **Disputes Filed With Equifax,** above.

156.    CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

157.    CHASE falsely reported to Equifax that the Plaintiff caused a foreclosure.

158.    CHASE's actions in falsely and incompletely reporting this matter constituted a multiple publication in that CHASE updated and verified this inaccurate and incomplete information on multiple occasions and third parties have read Plaintiff's credit since October 2009.

159.    CHASE could have avoided all liability by simply deleting the false, incomplete, and inaccurate foreclosure, but it made a conscious and informed choice to continue reporting the matter.

160.    CHASE intentionally and with malice falsely reported the foreclosure that it caused.

161.    CHASE has refused to correct this matter even though two disputes have been filed with Equifax this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to report Plaintiff's mortgage as being in default. A host of other creditors and third parties have read the Plaintiff's credit file in 2009.

162.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

163.    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

164.    WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Eleventh Cause of Action
### Defamation

19

165.     PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, and section entitled **Disputes Filed With TransUnion,** above.

166.     CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

167.     CHASE falsely reported to TransUnion that the Plaintiff caused a foreclosure.

168.     CHASE intentionally and with malice falsely reported the foreclosure that it caused.

169.     CHASE has refused to correct this matter even though two disputes have been filed with TransUnion this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to report Plaintiff's mortgage as being in default. A host of other creditors and third parties have read the Plaintiff's credit file in 2009.

170.     CHASE's actions in falsely and incompletely reporting this matter constituted a multiple publication in that CHASE updated and verified this inaccurate and incomplete information on multiple occasions and third parties have read Plaintiff's credit since October 2009.

171.     CHASE could have avoided all liability by simply deleting the false, incomplete, and inaccurate foreclosure, but it made a conscious and informed choice to continue reporting the matter.

172.     Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

173.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

174.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Twelfth Cause of Action
### Defamation

175.    PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, and section entitled **Disputes Filed With Innovis,** above.

176.    CHASE failed to conduct an investigation into Plaintiff's credit history after being notified of disputes by Innovis and CHASE failed to follow reasonable credit reporting procedures. CHASE is in violation of **the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b),** by intentionally and willfully reporting false or inaccurate or incomplete information to a credit reporting agency and by refusing to correct the errors even when the Plaintiff filed disputes with the credit reporting agency. Moreover, CHASE updated and verified the incorrect information.

177.    CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

178.    CHASE falsely reported to Innovis that the Plaintiff caused a foreclosure.

179.    CHASE intentionally and with malice falsely reported the foreclosure that it caused.

180.    CHASE has refused to correct this matter even though two disputes have been filed with Innovis this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to report Plaintiff's mortgage as being in default. A host of other creditors and third parties have read the Plaintiff's credit file in 2009.

181.    CHASE's actions in falsely and incompletely reporting this matter constituted a multiple publication in that CHASE updated and verified this inaccurate and incomplete information on multiple occasions and third parties have read Plaintiff's credit since October 2009.

182.    CHASE could have avoided all liability by simply deleting the false, incomplete, and inaccurate foreclosure, but it made a conscious and informed choice to continue reporting the matter.

183.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

184.    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

185.    WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

### Thirteenth Cause of Action
### Violation of the Fair Credit Reporting Act (FCRA), 15 USC § 1681s-2(b)

186.    PLAINTIFF incorporates by reference the allegations in Paragraphs 1-7 and **Disputes Filed With Experian**, above.

187.    CHASE failed to conduct an investigation into Plaintiff's credit history after being notified of disputes by Experian and CHASE failed to follow reasonable credit reporting procedures. CHASE is in violation of **the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b),** by intentionally and willfully reporting false or inaccurate or incomplete information to a credit reporting agency and by refusing to correct the errors even when the Plaintiff filed disputes with the credit reporting agency. Moreover, CHASE updated and verified the incorrect information.

188.    CHASE has had ample opportunity and indeed the legal obligation to correct the Plaintiff's credit report given the multiplicity of disputes alleged in this complaint, but CHASE has freely chosen not to do so.

189.    CHASE caused the default and subsequent foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

190.    CHASE falsely reported to Experian that the Plaintiff caused a foreclosure.

191.    CHASE has refused to correct this matter even though multiple disputes have been filed with Experian this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continues to falsely report Plaintiff's mortgage as having been foreclosed on by judgment.

192.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

193.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

194.     WHEREFORE, and based upon the foregoing, Plaintiff requests all the relief that is specifically set forth at 15 USC § 1681n(a), which includes actual damages or not less than $100.00 nor more than $1000 in damages, punitive damages, costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any and all other relief that the Court deems just and appropriate in light of the evidence adduced at trial.

### Fourteenth Cause of Action
### Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b)

195.     PLAINTIFF incorporates by reference the allegations in Paragraphs 1-7 and **Disputes Filed With Equifax**, above.

196.     CHASE failed to conduct an investigation into Plaintiff's credit history after being notified of disputes by Equifax and CHASE failed to follow reasonable credit reporting procedures.  CHASE is in violation of **the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b),** by intentionally and willfully reporting false or inaccurate or incomplete information to a credit reporting agency and by refusing to correct the errors even when the Plaintiff filed disputes with the credit reporting agency.  Moreover, CHASE updated and verified the incorrect information.

197.     CHASE has had ample opportunity and indeed the legal obligation to correct the Plaintiff's credit report given the multiplicity of disputes alleged in this complaint, but CHASE has freely chosen not to do so.

198.     CHASE caused the foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

199.     CHASE falsely reported to Equifax that the Plaintiff caused a foreclosure.

200.     CHASE has also reported and verified information that is inaccurate on its face and inconsistent with logic.  The report states that the account has a Current Status: 120+ DAYS PAST DUE with a Amount Past Due: $0.00.  The report shows a mortgage loan with a balance of $51,000 with a Scheduled Payment Amount of $30. At this rate, it would take an infinite amount of time to pay off the loan because $30.00 a month won't cover interest payments much less the principal.

201.    CHASE has refused to correct this matter even though multiple disputes have been filed with Equifax this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to falsely report Plaintiff's mortgage as being as a foreclosure judgment and other erroneous entries until or about November 25, 2009 when Equifax deleted the CHASE tradeline.

202.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

203.    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

204.    WHEREFORE, and based upon the foregoing, Plaintiff requests all the relief that is specifically set forth at 15 USC § 1681n(a), which includes actual damages or not less than $100.00 nor more than $1000 in damages, punitive damages, costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any and all other relief that the Court deems just and appropriate in light of the evidence adduced at trial.

### Fifteenth Cause of Action

### Violation of the Fair Credit Reporting Act (FCRA), 15 USC § 1681s-2(b)

205.    PLAINTIFF incorporates by reference the allegations in Paragraphs 1-7, and **Disputes Filed With TransUnion** section, above.

206.    CHASE failed to conduct an investigation into Plaintiff's credit history after being notified of disputes by TransUnion and CHASE failed to follow reasonable credit reporting procedures. CHASE is in violation of **the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b),** by intentionally and willfully reporting false or inaccurate or incomplete information to a credit reporting agency and by refusing to correct the errors even when the Plaintiff filed disputes with the credit reporting agency. Moreover, CHASE updated and verified the incorrect information.

207.    CHASE has had ample opportunity and indeed the legal obligation to correct the Plaintiff's credit report given the multiplicity of disputes alleged in this complaint, but CHASE has freely chosen not to do so.

24

208.       CHASE caused the foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

209.       CHASE falsely reported to TransUnion that the Plaintiff caused a foreclosure.

210.       CHASE has refused to correct this matter even though two disputes have been filed with TransUnion this year. Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to report Plaintiff's mortgage as being in default.

211.       Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

212.        As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

213.       WHEREFORE, and based upon the foregoing, Plaintiff requests all the relief that is specifically set forth at 15 USC § 1681n(a), which includes actual damages or not less than $100.00 nor more than $1000 in damages, punitive damages, costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any and all other relief that the Court deems just and appropriate in light of the evidence adduced at trial.

## Sixteenth Cause of Action

### Violation of the Fair Credit Reporting Act (FCRA), 15 USC § 1681s-2(b)

214.       PLAINTIFF incorporates by reference the allegations in Paragraphs 1-7, and **Disputes Filed Innovis** section, above.

215.       CHASE failed to conduct an investigation into Plaintiff's credit history after being notified of disputes by Innovis and CHASE failed to follow reasonable credit reporting procedures. CHASE is in violation of **the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b),** by intentionally and willfully reporting false or inaccurate or incomplete information to a credit reporting agency and by refusing to correct the errors even when the Plaintiff filed disputes with the credit reporting agency. Moreover, CHASE updated and verified the incorrect information.

216.     CHASE has had ample opportunity and indeed the legal obligation to correct the Plaintiff's credit report given the multiplicity of disputes alleged in this complaint, but CHASE has freely chosen not to do so.

217.     CHASE caused the foreclosure by disregarding the Repayment Agreement signed in December 2004. Had CHASE honored the agreement there would have been no foreclosure.

218.     CHASE falsely reported to Innovis that the Plaintiff caused a foreclosure.

219.     Additionally, CHASE was told through their attorney during pendency of the state court litigation that a Repayment Agreement had been reached. Despite all the foregoing, CHASE continued to report Plaintiff's mortgage as being in default.

220.     Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

221.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

222.     WHEREFORE, and based upon the foregoing, Plaintiff requests all the relief that is specifically set forth at 15 USC § 1681n(a), which includes actual damages or not less than $100.00 nor more than $1000 in damages, punitive damages, costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any and all other relief that the Court deems just and appropriate in light of the evidence adduced at trial.

### Seventeenth Cause of Action
### Violation of the Fair Credit Reporting Act (FCRA), 15 USC § 1681s-2(b)(1)
### Failure to Report a Dispute

223.     PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, and **Disputes Filed With Furnisher Chase**, above.

224.     CHASE violated its duties as a furnisher of information under FCRA, 15 U.S.C.A. § 1681s-2(b)(1), by failing to report the disputed natured of the foreclosure judgment. CHASE has failed to follow reasonable credit reporting procedures. CHASE falsely reported to TransUnion, Equifax, Innovis, and Experian that the Plaintiff caused a foreclosure. CHASE's reporting of the mortgage foreclosure is incomplete and

misleading in that it fails to note that CHASE disregarded the Repayment Agreement. Had CHASE honored the agreement there would have been no foreclosure.

225.     On October 8, 2009, Chase received direct furnisher dispute from the Plaintiff which accused CHASE of concocting the foreclosure it now decries.

226.     CHASE refused to report that the Plaintiff disputes the foreclosure.

227.     To date CHASE has refused to report to any of the credit reporting agencies that the Plaintiff disputed the foreclosure and further that the Plaintiff did not cause the foreclosure and further that the Plaintiff had cured the original default by faithfully complying with a Repayment Agreement signed in December 2004.

228.     Since October 8, 2009, when CHASE received a dispute directly from the Plaintiff, CHASE has continued to verify and confirm to both Experian and Equifax that the mortgage foreclosure is accurate on numerous occasions.

229.     Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

230.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

231.     WHEREFORE, and based upon the foregoing, Plaintiff requests all the relief that is specifically set forth at 15 USC § 1681n(a), which includes actual damages or not less than $100.00 nor more than $1000 in damages, punitive damages, costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any and all other relief that the Court deems just and appropriate in light of the evidence adduced at trial.

### Eighteenth Cause of Action
### The Florida Deceptive and Unfair Trade Practices Act

232.     PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, above.

233.     CHASE is in violation of **The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla.Stat. §§ 501.201, et.seq.,** by committing an unconscionable act by disregarding a mortgage repayment

agreement and seeking foreclosure when the Plaintiff had complied with all the terms of the repayment agreement.

234.    CHASE deceived the Plaintiff into signing a Repayment Agreement and in so doing CHASE received and kept $5261.73 for almost three years interest free. Moreover, CHASE refused to reduce the principal by any portion of the $5261.73 thereby charging the Plaintiff interest on an inflated principal balance.

235.    It is prima facie unconscionable if mortgagee agrees to a repayment schedule and then disavows it on the timely receipt of the very first payment and then seeks a legal action in foreclosure.

236.    Additionally, CHASE used an unpled claim, purported January 1, 2005 default, to foreclose on Plaintiff's home. Chase also failed to accelerate the loan as required under the promissory note and thus had no legal right to foreclose on its unpled claim, a purported January 1, 2005 default.

237.    Due to CHASE's unlawful foreclosure, Plaintiff was unable to short sale his home. Plaintiff lost the difference between today's fair market value, $61,000, and the principal balance of $47,471.84. Plaintiff lost the interest on his $5261.73 that CHASE received and kept for almost three years interest free. Plaintiff has lost the fair market value of the monthly rental, $500.00, of his home since February 2006.

238.    Additionally, Plaintiff incurred costs due to this wrongful foreclosure: Attorney's fees, $1650.00; Court Costs, $740.00; Late Charges, $312.86.

239.    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress and humiliation.

240.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

241.    WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

**Nineteenth Cause of Action**
**The Florida Deceptive and Unfair Trade Practices Act**

242.    PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, above.

243.     CHASE is in violation of The **Florida Deceptive and Unfair Trade Practices Act (FDUTPA),**
**Fla.Stat. §§ 501.201, et.seq.,** by committing an unconscionable act by delaying processing on multiple
repayment agreements and charging interest for its own delay and or incompetence. Chase padded its fees and
showed a reckless disregard for costs that it knew it could attribute to the Plaintiff.

244.     Additionally, CHASE used an unpled claim, purported January 1, 2005 default, to foreclose on
Plaintiff's home.

245.     Due to CHASE's unlawful foreclosure, Plaintiff was unable to short sale his home. Plaintiff lost the
difference between today's fair market value, $61,000, and the principal balance of $47,471.84. Plaintiff
lost the interest on his $5261.73 that CHASE received and kept for almost three years interest free. Plaintiff
has lost the fair market value of the monthly rental, $500.00, of his home since February 2006.

246.     Additionally, Plaintiff incurred costs due to this wrongful foreclosure: Attorney's fees, $1650.00:
Court Costs, $740.00; Late Charges, $312.86.

247.     As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and
extreme emotional distress and humiliation.

248.     Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates,
denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

249.     WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages, plus costs, and any
attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem
just and appropriate.

### Twentieth Cause of Action
### Civil Theft

250.     PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

251.     CHASE, Sarah L. Spradling, Executive Resolution Group, and its counsel Joe Hoffman, Spear and
Hoffman, P.A., in the state court action, were sent Pre-suit Notices by the Plaintiff pursuant to Fla.Stat.
§772.11 via U.S. Mail and email respectively on November 19, 2009.

29

252.     In December 2004, CHASE agreed to forego foreclosure and to dismiss its pending foreclosure action in consideration of payments of approximately $865.00 a month for twelve months and a lump sum payment of $5261.73.

253.     Having accepted the check for $5261.73 in December 2004 , CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73.

254.     CHASE kept the $5261.73 for almost three years until sometime in 2007.

255.     On February 16, 2005, CHASE disavowed any contract by falsely alleging that the Plaintiff failed to return the necessary documents.  Consequently, CHASE of necessity no longer had any legal claim to the $5261.73.

256.     On June 1, 2005, Plaintiff sent Chase's attorney, Joe Hoffman, Spear and Hoffman, P.A., an email in which the Plaintiff which demanded: "Please have Chase return my check for approximately $5200 forthwith. Chase had no problem returning a check for a mere $868.00. You simply can not have it both ways."  Neither Chase nor its attorney responded to the email stating why they would not return the check for $5200.

257.     CHASE offered no explanation as to why it was entitled to keep the Plaintiff's $5261.73.  CHASE acted with felonious intent to steal.

258.     CHASE obtained Plaintiff's $5261.73 by a willful misrepresentation of a future act, or false promise, that it would not foreclose if Plaintiff complied with a contract.

259.     CHASE stole Plaintiff's $5261.73.

260.     WHEREFORE, and based upon the foregoing, Plaintiff seeks statutory treble damages, pursuant to Fla.Stat. §772.11 and any other relief this court may deem just and appropriate.

### Twenty-First Cause of Action
### Civil Theft

261.     PLAINTIFF incorporates by reference the allegations as set forth in Paragraphs 1-36, above.

262.     CHASE's record counsel, Spear and Hoffman, P.A., in the state court action, was sent a Pre-suit Notice by the Plaintiff pursuant to Fla.Stat. §772.11 via U.S. Mail on December 9, 2009.

263.     CHASE concocted a near fool proof scam and committed several acts of legal subterfuge in order to steal the Plaintiff's home.

264.     Firstly, CHASE committed fraud on the court because by keeping the Plaintiff out of court and mounting a vigorous defense by falsely promising the Plaintiff a loan workout. As a result of CHASE's false promise, Plaintiff relied to his detriment on CHASE's supposed "good faith" and did not file an answer and affirmative defenses to CHASE's foreclosure action on the purported March 2004 default.

265.     Secondly, CHASE breached a repayment agreement. In December 2004, CHASE agreed to forego foreclosure and to dismiss its pending foreclosure action in consideration of payments of approximately $865.00 a month for twelve months and a lump sum payment of $5261.73.

266.     Having accepted the check for $5261.73 in December 2004, CHASE declared the Plaintiff in default of the Repayment Agreement and returned the very first January 2005 payment of $865.00 in February 2005 while declining to return the $5261.73. CHASE kept the $5261.73 for almost three years until sometime in 2007.

267.     On February 16, 2005, CHASE disavowed any contract by falsely alleging that the Plaintiff failed to return the necessary documents.

268.     Thirdly, CHASE won a foreclosure judgment based upon a claim, a purported January 1, 2005, that was never pled and mentioned for the very first time in a summary judgment motion or about October 2005. This unpled claim has **NEVER** been the subject of a proper complaint and lawsuit. Giver that CHASE never filed a complaint for the alleged January 1, 2005 default, Plaintiff was unable to raise a counter-claim that CHASE had entered into a repayment agreement in December 2004, and further that CHASE had breached this agreement.

269.     CHASE acted with felonious intent to steal the Plaintiff's home.

270.     CHASE stole the Plaintiff's home, $61,000 current market value, by a willful misrepresentation of a future act, or false promise, that it would not foreclose if Plaintiff complied with a contract.

271.     WHEREFORE, and based upon the foregoing, Plaintiff seeks statutory treble damages, pursuant to Fla.Stat. §772.11 and any other relief this court may deem just and appropriate.

### Twenty-Second Cause of Action
Violation of FCCPA, section 559.72(5)

272.    PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, above.

273.    CHASE is in violation of the **Florida Consumer Collection Practices Act** (FCCPA)**, Fla.Stat. §559.72(5),**

**by attempting** to enforce a debt when CHASE knew that the debt was not legitimate.

274.    As fully set forth above in numerous places, CHASE lost its legal right to maintain a foreclosure action when it

freely entered into the Repayment Agreement of December 2004.  The debt was fully satisfied when the Plaintiff

mailed CHASE a cashier's check for about $865.00 in January 2005.  Additionally, CHASE won a foreclosure

based upon an unplead claim.

275.    Moreover, CHASE's position was logically impossible in that the Plaintiff could not been in default for two

consecutive default periods without a cure in between as stated by Chase when it claimed a March 2004 default in

the Complaint and January 1, 2005 default in its unpled claim.

276.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied

insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

277.    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme

emotional distress.

278.    WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages and statutory damages of $1,000,

noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages,  plus

costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court

may deem just and appropriate.

### Twenty-Third Cause of Action
Violation of FCCPA, section 559.72(9)

279.    PLAINTIFF incorporates by reference the allegations in Paragraphs 1-36, above.

280.    CHASE is in violation of the Florida Consumer Collection Practices Act (FCCPA), Fla.Stat. §559.72(9), by

defaming the Plaintiff in intentionally reporting false, inaccurate, and misleading information about the alleged

foreclosure to the credit reporting agencies, [Experian, Equifax, TransUnion, and Innovis] As fully set forth above

in numerous places, CHASE lost its legal right to maintain a foreclosure action when it freely entered into the Repayment Agreement of December 2004.

281.    CHASE's actions in falsely and incompletely reporting this matter constituted a multiple publication in that CHASE updated and verified this inaccurate and incomplete information on multiple occasions and third parties have read Plaintiff's credit since October 2009.

282.    CHASE intentionally and with malice falsely reported the foreclosure that it caused.

283.    Any alleged default was cured and satisfied in January 2005 when the Plaintiff mailed CHASE a check for about $865.00

284.    Moreover, CHASE's position was logically impossible in that the Plaintiff could not been in default for two consecutive default periods without a cure in between as stated by Chase when it claimed a March 2004 default in the Complaint and January 1, 2005 default in its unpled claim.

285.    Plaintiff has been damaged in that he has been denied credit, subjected to higher interest rates, denied insurance, and paid higher insurance premiums as a direct result of Defendant's unlawful behavior.

286.    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

287.    WHEREFORE, and based upon the foregoing, Plaintiff seeks actual damages and statutory damages of $1,000, noneconomic damages, pain and suffering, including past and future pain and suffering, punitive damages,  plus costs, and any attorneys' fees that may arise as a result of prosecuting this matter and any other relief this court may deem just and appropriate.

## JURY DEMAND

288.  Plaintiff demands trial by jury with respect to all claims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was transmitted via U.S. mail and/or e-mail, this 15th day of January, 2010, to:

Cory W. Eichhorn
Greenberg Traurig
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301

Marcellus Mason Jr.
214 Atterberry Drive
Sebring, FL 33870

Dated this 15th day of January 2010.